# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

*UNITED STATES OF AMERICA*

*v.*

*EMANUEL D. HAUDLEY SR.*

**CRIMINAL COMPLAINT**
(ELECTRONICALLY SUBMITTED)

CASE NUMBER: 19-4195 MJ

I, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

**On or about July 18, 2019, in the District of Arizona, within the confines of the Navajo Nation Indian Reservation, Indian Country, the defendant, EMANUEL D. HAUDLEY SR., an Indian male, did unlawfully kill E.C., with malice aforethought, in violation of Title 18, United States Code, Sections 1111(a) and 1153.**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

REVIEWED BY: */s AUSA Paul V. Stearns*

__X__ Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.

John A. Garcia, Special Agent, FBI
Complainant's Name and Title

__X__ Sworn by Telephone

Complainant's Signature          Date: 7-22-19

July 22, 2019 at 11:40 am
Date/Time

Flagstaff, Arizona
City and State

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALY SUBMITTED AFFIDAVIT**

I, <u>Special Agent John A. Garcia</u>, state the following under oath:

1. Your affiant, John A. Garcia, is a Special Agent ("SA") for the Federal Bureau of Investigation (FBI) and has been so employed since January of 2019. Your affiant previously served as a sworn law enforcement officer for approximately 10 years with the Savannah Police Department, Savannah, GA. In this assignment, your affiant was a criminal investigator and received extensive training in criminal investigations. Additionally, your affiant served as a deputized Task Force Officer (TFO) with the FBI in Savannah.

2. This affidavit is based on the investigation, observations, and/or experience of your affiant, as well as the investigations, observations, and/or experiences of other law enforcement officers and/or witnesses including those described in this affidavit. This includes information learned from FBI SA Scott Sandusky, as well as Navajo Nation Criminal Investigator (CI) Clinton Gilbert, Navajo Nation CI Ernie Yazzie, and Navajo Nation CI Verna Nez. Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation.

### Introduction

3. This case involves the murder of EC by Emanuel Haudley Sr. (Haudley), which occurred on the Navajo Indian Reservation (Indian Country), in

1

the District of Arizona, on or about July 18, 2019, in violation of 18 U.S.C. §§ 1111(a) and 1153. Haudley is an adult male Indian, and he is an enrolled member of the Navajo Nation Indian Tribe. EC was an adult Indian female. The Navajo Nation Indian Tribe is a federally recognized Indian Tribe.

## Investigation/Probable Cause

4. Prior to July 18, 2019, Haudley had been staying periodically in Shonto, Arizona, on the Navajo Reservation, in the District of Arizona, with EC. There was also a six-year old female, Jane Doe, living in the residence with EC. EC was Jane Doe's grandmother, and EC had custody of Jane Doe.

5. On July 18, 2019, Haudley showed up at SW's residence near Many Farms, Arizona. SW is the mother of Haudley. Haudley was described as being intoxicated, and he was driving a vehicle that was not his. The vehicle belonged to EC. Haudley appeared to have blood on him, and he told SW that he had killed two people.

6. Special Agent Scott Sandusky received a written statement from SW about the incident. SW advised that Haudley arrived at her house and asked her to bring in some things that were in his car. One male occupant that was riding with Haudley began bringing the items into her house. SW did not say anything to him, but Haudley came to her and stated something to the effect of, "Mom, I killed two people in Kayenta." SW stated that Haudley told her he did not care, and that he was not scared.

7.  Haudley left SW's house at which time SW went to the shed where the occupant that was riding with Haudley had brought the items. SW observed a garden hoe with a yellow handle, and blood was all over it.

8.  SW called Navajo police officers out of Chinle, Arizona, who responded to her residence. Navajo police officers detained Haudley, who was intoxicated. The officers observed blood and blood-covered items in the vehicle. The officers located a purse in the vehicle. Inside the purse, there was an identification card for EC. The officers determined that EC was not an occupant in the vehicle that Haudley was driving.

9.  SW gave investigators consent to search her residence and located/seized a pair of gardening gloves and a spade-type garden tool that appeared to have blood on it.

10. Based on the information provided by SW about a possible murder, Chinle officers used the address on the identification card and called Navajo police officers from Kayenta, Arizona, and asked them to check EC's residence in Shonto, Arizona. Officers responded to the area of EC's residence in Shonto, Arizona, which is within the confines of the Navajo Indian Reservation (Indian Country) in the Navajo Nation Kayenta Judicial District.

11. Upon arrival at EC's house, officers found EC deceased; she was outside of her residence. EC was laying on the ground, and a pool of blood was observed outside of her front door. There was blood evidence at the scene that

looked like EC's body was moved and that someone may have been trying to load EC into a vehicle.

12.     Initial observations of EC's injuries showed that she may have been attacked or killed with a blunt force and/or edged weapon, consistent with an axe or garden tool.

13.     Blood evidence (droplets) led from EC's body back up to the doorway of the residence.  The Navajo Nation police officers conducted a protective sweep of the residence and did not locate any other victims in the residence.  The officers then backed out of the residence.

14.     Navajo Nation police from Kayenta, Arizona, also received a call about a 6-year old female, Jane Doe, walking on the highway by herself.  ST, who was a passerby stopped and stayed with the child until officers arrived.  Your affiant interviewed ST and was told that Jane Doe was running on Hwy 160 alone.  ST pulled over and was told by Jane Doe that she was running to Tuba City, Arizona, to get help because someone killed her grandmother. Jane Doe advised that Haudley killed her grandmother and left with her grandmother's car after he killed her. Jane Doe advised that she was sleeping when Haudley did it, and that he killed her grandmother with an axe.  Jane Doe described Haudley as "drunk."  Additionally, Jane Doe advised that she did not see the actually killing, but she did see Haudley leave with her grandmother's car.  Arriving Navajo police officers turned Jane Doe over to Navajo Child Protective Services.

15. As part of this investigation, your affiant responded to EC's residence on July 18, 2019. While there, your affiant observed several broken pieces of wood that appeared to be from a garden tool or broom stick handle near the pool of blood in front of EC's residence and by EC's body. The tool was missing part of the broken wooden handle. Agent Sandusky searched EC's vehicle at Taylor's Affordable Towing LLC. located 6.5 mile north of Chinle, west of mile marker 454.2, and Agent Sandusky found a piece of a broken wooden handle consistent with the pieces found by your affiant. The broken piece of the handle had what appeared to be blood and human hair on it. Additionally, EC's vehicle had what appeared to be a smear of blood on the rear bumper, which was consistent with the evidence at the crime scene at EC's residence that someone may have backed a vehicle up to EC's body and tried to load her into a vehicle.

16. FBI agents swabbed what appeared to be bloodstains on Haudley's person and seized his clothing. The clothing appeared to have blood on it.

17. An autopsy of EC was conducted in Flagstaff, Arizona on July 19, 2019. The results of the autopsy are not yet in; however, the autopsy was attended by FBI Task Force Officer (TFO) Verna Nez. TFO Nez reported to your affiant that EC had multiple lacerations to the head, a deep laceration to her cheek area, and a penetrating injury in the chest cavity area. EC also had two broken arms. The manner of death was described as a homicide.

18. Your affiant interviewed Haudley on July 19, 2019, and he waived his

Miranda rights. In summary, Haudley said that he, EC, and Jane Doe were coming back from shopping in Washington, Utah. Upon arrival at EC's house, Haudley explained that EC told him to get out of her car. His was phone was going off, and EC began to say something to the effect of, "Your girlfriends are calling you again." Haudley told EC that he did not say anything to her about her boyfriend's talking to her on the phone. Haudley described that EC talked on the phone a lot. EC continued to go off on Haudley about the subject. Haudley said that he told EC that he did not want to hear this shit. EC told him that she was going to call the cops. Haudley said that he told EC to go ahead and call the cops, because that was the only thing she does. Haudley saw the little girl, Jane Doe, standing at the door and told her to go to sleep. Haudley said that he told Jane Doe that this was between him and EC.

19. During the interview, Haudley denied killing EC. Haudley claimed that two other women, one whom was an ex-girlfriend, showed up from behind the house and started an argument with EC. Haudley said that EC and these two women began pushing each other at which time he went inside the home. Haudley said that he went inside and took some medication while laying down on his bed. He claimed in a different part of the interview that he was intoxicated and would black out at different times. Haudley advised that he heard screaming and ruffling outside. Haudley said that eventually he exited the home and found EC lying on the ground alive and asking him to help her.

20. Haudley advised that he was scared and he did not want to be blamed for something he did not do. Haudley admitted to attempting to move EC's body into EC's car (i.e., the car Haudley was driving), but she was too heavy and he was unable to put her in the car. Haudley also admitted to removing a garden hoe that was next to a pool of blood outside of EC's house. Haudley said he took it to his mother's home because he was scared and did not want to be framed for something he did not do. Haudley stated to your affiant that he told his mother something to the effect of, "Something happened, I think. I don't want to be blamed for this and that. Can you help me out?" Haudley then told his mother that it was the same as the incident a couple years back with his little brother Duke. Haudley stated, "He [Duke] killed some people too."

21. During the interview, Haudley was admonished to tell the truth. Haudley stated to your affiant that he told the other guy he was not going down for this by himself. Your affiant asked Haudley why he would get blamed for the garden hoe. Haudley stated, "Because I was the only one there and there's that little girl there. That little girl, people would believe the little girl instead of me because of my bad history." Haudley said that the only item he grabbed from the crime scene was the garden hoe. Your affiant asked Haudley how the broken wooden handle ended up in the vehicle. Haudley denied any knowledge of a broken wooden handle.

22. Haudley is currently in Navajo tribal custody on tribal charges.

## Conclusion

23. Based on the above, your affiant believes that there is probable to cause to support that on or about July 18, 2019, within the confines of the Navajo Nation Indian Reservation, in the District of Arizona, Emanuel Haudley Sr. violated federal law, 18 U.S.C. §§ 1111(a) and 1153.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_____
John A. Garcia, Special Agent, FBI

7-22-19
Executed on (Date)

X_____ Sworn by Telephone

Date/Time: July 22, 2019 at 11:40 am

_Camille D Bibles_
Camille D. Bibles
United States Magistrate Judge

8